**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2189-16T4

WELLS FARGO BANK, N.A.,

    Plaintiff-Respondent,

v.

LOUIS CICENIA and MRS. LATEF,
wife of Zafer Latef,

    Defendants,

and

ZAFER LATEF and MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC., as nominee for
METLIFE HOME LOANS,

    Defendants-Appellants.

_____

Submitted May 9, 2018 — Decided July 17, 2018

Before Judges Koblitz, Manahan and Suter.

On appeal from Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. F-021199-15.

Herold Law, PA, attorneys for appellants (Raymond R. Siberine, of counsel and on the brief; Craig S. Provorny, on the brief).

Reed Smith LLP, attorneys for respondent (Henry F. Reichner, of counsel and on the brief).

PER CURIAM

Zafer Latef and Mortgage Electronic Registration Systems, Inc. (MERS) appeal from a December 21, 2016 final residential foreclosure judgment and the preceding June 28, 2016 order of the Chancery Division striking defendants' answer and returning the matter to the Office of Foreclosure as an uncontested matter. R. 4:64-1(c)(3). We affirm.

By consent, this matter was tried by the Chancery Court based on documentary evidence including depositions, with no live testimony. Latef owns and resides at the residential condominium property (Unit 2) subject to this foreclosure action. Unit 2 is identified on the Hoboken tax map by block and lot number. MERS, as nominee for MetLife Home Loans, is the mortgagee in the Latef/MERS Mortgage. Cicenia is the previous owner of the property who conveyed Unit 2 to Latef in 2010.

In October 2007, Cicenia entered into a $250,000 Prime Equity Line of Credit Agreement with Wachovia (Wachovia Agreement). Wells Fargo is the successor in interest to Wachovia by name change and

merger.[1]   The section of the Wachovia Agreement entitled "Collateral" did not specifically describe Unit 2.

To secure the line of credit, Cicenia executed and delivered a mortgage to Wachovia (Wachovia HELOC) that was recorded. The first page of the Wachovia HELOC describes the mortgaged property by the address, without including the unit number. The second page of the Wachovia HELOC contains a section entitled "TRANSFER OF RIGHTS IN THE PROPERTY." That section states in pertinent part:

> This Security Instrument secures to [Wachovia] . . . (ii) the performance of [Cicenia's] covenants and agreements under this Security Instrument and [Cicenia's] covenants and agreements under the Debt Instrument. For these purposes, [Cicenia] does hereby mortgage, grant and convey to [Wachovia] the following described property located in the County of Hudson, State of New Jersey.

The space provided for insertion of a property description was left blank.

The last page of the Wachovia HELOC, not numbered and titled Schedule A, refers to the property by street address without unit number, and notes that it is more particularly described in a deed, noting the book and page numbers where the deed is recorded. Cicenia and Wells Fargo's closing agent stated at their depositions

---

[1]   See Suser v. Wachovia Mortgage, FSB, 433 N.J. Super. 317, 321 (App. Div. 2013).

that they had no recollection of Schedule A being attached to the Wachovia HELOC at the time of execution.

In March 2010, Cicenia and Latef executed a contract of sale (Latef contract) for $213,500 for Unit 2. Latef obtained a $160,000 purchase money mortgage from MetLife Home Loans.

In April 2010, First Jersey Title Services, agent for First American Title Insurance, conducted a title search for judgments and liens, and reported the search was clear. First American then issued a title policy stating the property was clear of any encumbrances, liens, and judgments. After executing the Latef contract, and before closing, Cicenia provided Latef with a copy of Cicenia's owner policy of title insurance. The only mortgage identified as an exception in Cicenia's owner policy was Cicenia's 1998 purchase money mortgage, which had since been discharged. It did not disclose the Wachovia HELOC, nor did Cicenia or his counsel.

Prior to closing, Latef's counsel obtained a title commitment covering Latef's purchase of Unit 2 and Latef's purchase money mortgage. The title commitment indicated there were no open mortgages of record encumbering Unit 2. Also before closing, Cicenia received a monthly statement from Wells Fargo indicating the outstanding balance on the Wachovia HELOC was $249,048.17. He did not disclose this information to Latef.

4

The closing on Unit 2 took place on June 25, 2010. Cicenia received $200,957.09. Wells Fargo discovered Cicenia sold Unit 2 over two months after the closing. Cicenia continued to make payments on the Wachovia HELOC for approximately two more years.

Although it had accepted Cicenia's payments for almost two years, in March 2012 Wells Fargo sent Cicenia a notice of default based on the sale of Unit 2. Wells Fargo refused to accept payments thereafter and sent two notices of its intent to accelerate and foreclose, with a copy to Latef. As a result, Latef filed a complaint against Cicenia in the Law Division of Essex County, where Cicenia resided, alleging conversion, fraud, and breach of covenant of title, seeking money damages only. The complaint did not name Wells Fargo nor seek to quiet title for Unit 2. Cicenia filed a third-party complaint against Wells Fargo, which subsequently settled between the two parties.

The Law Division jury trial began in May 2014. At the conclusion of Latef's case-in-chief, Cicenia moved for a directed verdict and dismissal of Latef's claims, arguing Latef had not established that the Wachovia HELOC was an encumbrance on Unit 2 and had not proved damages. The Law Division judge granted Cicenia's motion, finding that no competent evidence was presented that would allow the jury to calculate damages or determine that Cicenia acted intentionally. She noted that the matter was not

an action to quiet title and Latef had not joined Wells Fargo to the action. She did not rule on the issue of whether the Wachovia HELOC was a valid encumbrance on Unit 2 as against Latef or the mortgage was properly recorded. A June 11, 2014 order dismissed Latef's complaint with prejudice.

Latef appealed and we affirmed. Latef v. Cicenia, No. A-5747-13 (App. Div. March 14, 2016). We determined Latef lacked standing to seek the amount due Wells Fargo because Latef had not proved there was a substantial likelihood he would suffer harm. He had not demonstrated at trial that Wells Fargo had a valid lien. We noted that "Wells Fargo was an indispensable party to litigation that determined the validity of its [mortgage] claim against [Cicenia]." Any judgment in the matter "would not be binding on Wells Fargo."

Recognizing the litigation did not involve a quiet title claim, we determined the evidence did not demonstrate that Wachovia HELOC encumbered Unit 2, stating:

> The evidence at trial failed to show a lien existed on the unit purchased by defendant by virtue of a valid and properly recorded mortgage. The actual security instrument executing the [m]ortgage merely describes the encumbered property as the address of the building; it does not specify that it pertains to Unit 2.
>
> Because the mortgage did not specify that it encumbered Unit 2, plaintiff is not left

> unprotected against action to deprive him of his interest in Unit 2. . . .
>
> It is undisputed that plaintiff provided "valuable consideration" to acquire his interest in the property and that he did not have notice of the Wells Fargo mortgage. Assuming that plaintiff recorded his deed before Wells Fargo filed any mortgage that specifically identified the lien on Unit 2, he would qualify as a bona fide purchaser whose position would be protected against a claim by Wells Fargo against the property. The evidence therefore fails to show a substantial likelihood he will suffer harm.

We concluded:

> The deficiency in the description of the property to be encumbered permitted plaintiff to obtain insurable title and effectively defeats plaintiff's claim that there was an encumbrance upon Unit 2 constituting a breach of defendant's promises.

On June 15, 2015, Wells Fargo filed this residential foreclosure complaint naming Cicenia, Latef, and MERS as defendants. The complaint was filed approximately five years from the Unit 2 closing between Cicenia and Latef and over three years after Wells Fargo sent Cicenia its first notice of intention to accelerate and foreclose.

The Chancery Division found that although Wachovia HELOC itself did not contain a sufficient legal description, Schedule A, attached to the mortgage when recorded, did refer to the deed,

which clearly stated "the full address of the property, including the unit number."

In his written opinion, the Chancery judge described the issue as "whether the property description contained in the recorded [m]ortgage [Cicenia] granted [Wells Fargo] was sufficient to put [Latef], a subsequent purchaser, on notice that the [m]ortgage covered [Unit 2]." The judge found no legal reason precluding Wells Fargo "from executing and recording a mortgage that incorporates by reference a prior recorded deed," and the recording by Wells Fargo "adequately placed all subsequent purchasers of [Unit 2] on notice of [Wells Fargo's] mortgage." The judge found the description of the property in Schedule A directed subsequent purchasers to the Cicenia deed, which precisely described the Unit 2 property.

Issues of law are reviewed de novo. The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid. (quoting Manalapan Realty, L.P v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995)).

I.

Defendants contend the law of the case doctrine is applicable because Wells Fargo was brought in by Cicenia's third-party

complaint, and attended the first day of trial. Defendants rely on Schmidt v. Smith, 294 N.J. Super. 569 (App. Div. 1996), which they argue is factually similar to this case because an insurance company chose not to participate in a trial that found its insured liable, and the insurance company was thereafter held to be obligated to indemnify its insured.

Latef also argues that the law of the case requires that our appellate discussion of the law division appeal be applied to the Chancery decision. Both our written opinion and the Law Division oral opinion conclude that Wells Fargo was an indispensable party to litigation attempting to determine the validity of its lien and, absent joinder, Wells Fargo would not be bound by the rulings.

"The 'law of the case' doctrine generally 'requires a decision of law made in a particular case to be respected by all other lower or equal courts during the pendency of that case.'" CFG Health Sys., LLC v. Cty. of Essex, 411 N.J. Super. 378, 384 (App. Div. 2010) (quoting State v. Reldan, 100 N.J. 187, 203 (1985)). The doctrine generally applies to "legal issues in the same case." Franklin Med. Assocs. v. Newark Pub. Schs., 362 N.J. Super. 494, 512 (App. Div. 2003).

The "law of the case" doctrine does not benefit defendants. The doctrine applies to legal issues in the same case. Franklin Med. Assocs., 362 N.J. Super. at 512. This Chancery case is not

the same as the related Law Division or subsequent Appellate Division case. Additionally, application of the doctrine to preclude consideration of a legal issue is discretionary and not a rule of law. Toto v. Princeton Twp., 404 N.J. Super. 604, 618 (App. Div. 2009). Lastly, defendants' reliance on Schmidt is misguided, because the Schmidt decision was based upon the insurer/insured relationship of the parties, which does not exist here.

II.

Defendants argue the Wachovia HELOC does not adequately describe the mortgaged premises, Unit 2, and should therefore be considered invalid. Defendants contend the Wachovia HELOC fails to comply with the New Jersey Statute of Frauds, N.J.S.A. 25:1-1 to -16.

Under the Statute of Frauds:

> A transaction intended to transfer an interest in real estate shall not be effective to transfer ownership of the interest unless: (1) a description of the real estate sufficient to identify it, the nature of the interest, the fact of the transfer and the identity of the transferor and the transferee are established in a writing signed by or on behalf of the transferor.
>
> [N.J.S.A. 25:1-11(a)(1).]

"Generally, if property is not expressly included in the instrument's description, it will not be covered by the mortgage." Panetta v. Equity One, Inc., 190 N.J. 307, 323 (2007).

New Jersey allows for incorporation by reference in a recorded document that refers to a previous deed. See Garden of Memories, Inc. v. Forest Lawn Mem'l Park Ass'n, 109 N.J. Super. 523, 532-34 (App. Div. 1970) (explaining that references in a deed's exception recitals placed a purchaser on constructive notice of other previous deeds and the existence of another's interest in the subject property). The "purpose of a description of land . . . is to identify the subject-matter of the grant," which "may be done either by describing it in words at length, or by referring the reader to some other deed or record containing such a description." Mitchell v. D'Olier, 68 N.J.L. 375, 383 (E. & A. 1902). When a recorded document "refers to another deed, it has the effect of incorporating the latter deed in the description, so that what is therein described will pass." Kaplan v. Bernstein, 2 N.J. Misc. 762, 764 (Ch. Ct. 1924).

Defendants are correct that the numbered pages of the Wachovia HELOC do not contain a sufficient description of Unit 2, nor do they reference Schedule A. Based on Cicenia and the Wells Fargo closing agent's failure to recall Schedule A more than eight years after the closing, defendants speculate that the document was

attached to the Wachovia HELOC <u>after</u> Cicenia signed the mortgage. Schedule A of the Wachovia HELOC, however, was attached and recorded, and defendants have not provided evidence that Schedule A was not, in fact, attached to the Wachovia HELOC at the time of execution. A failure to recall is not affirmative evidence that it was not there.

Wells Fargo's obligation to provide a description of Unit 2 sufficient to identify it, N.J.S.A. 25:1-11(a)(1), was fulfilled by Schedule A's reference to the Cicenia Deed.

### III.

Defendants argue that this matter is similar to a case recently resolved by the New York Appellate Division, Second Department, <u>Maurice v. Maurice</u>, 131 A.D.3d 454 (N.Y. App. Div. 2015), where that court determined a deed having a deficient description of the mortgaged property was invalid. <u>Id.</u> at 455-57. In <u>Maurice</u>, an action to quiet title, the plaintiff submitted a deed that did not include a property description above his mother's signature and contained a blank space in the area where the description of the property was usually set forth. <u>Id.</u> at 455.

Unlike in New Jersey, New York case law states that "a deed conveying real property must set forth 'a specific grantor, a specific grantee, a property designation of the property, a recital

of the consideration, and . . . technical operative words.'" <u>Id.</u> at 456 (alteration in original) (quoting <u>Cohen v. Cohen</u>, 188 A.D. 933, 933 (N.Y. App. Div. 1919)). "A deed which contains a blank space instead of a description when signed is not an instrument of conveyance." <u>Ibid.</u> (quoting <u>Rekis v. Lake Minnewaska Mountain Houses, Inc.</u>, 170 A.D.2d 124, 127 (N.Y. App. Div. 1991)). Because the deed did not contain a property description, "it was void for uncertainty." <u>Ibid.</u> Additionally, a "Schedule A" document, which contained a metes and bounds description of the property, "and was allegedly found in the files of the law firm which prepared the 1999 deed, could not serve as a legal property description, as the 1999 deed contained no language incorporating it by reference." <u>Maurice</u>, 131 A.D.3d at 456. The court thus affirmed the trial court's ruling that the deed was invalid. <u>Id.</u> at 456-57.

Unlike in <u>Maurice</u>, where the Schedule A was found in the files of a law firm which had prepared the deed, 131 A.D.3d at 456, the Schedule A document in this matter was recorded as part of the Wachovia HELOC. We are therefore unpersuaded by this argument.

IV.

Our recording statutes govern mortgage priorities. N.J.S.A. 46:26A-1 to -12. "Lenders and other parties are generally charged with constructive notice of instruments that are properly

recorded." <u>Sovereign Bank v. Gillis</u>, 432 N.J. Super. 36, 43-44 (App. Div. 2013) (citing <u>Cox v. RKA Corp.</u>, 164 N.J. 487, 496 (2000)). "Any recorded document affecting the title to real property is, from the time of recording, notice to all subsequent purchasers, mortgagees and judgment creditors of the execution of the document recorded and its contents." N.J.S.A. 46:26A-12(a).

A party is presumed to be a bona fide purchaser unless proven otherwise. <u>Reaves v. Egg Harbor Twp.</u>, 277 N.J. Super. 360, 366 (Ch. Div. 1994). The burden is on Wells Fargo to show Latef had either actual, constructive, or inquiry notice of the Wachovia HELOC. It is "the duty of the purchaser to search the grantor and other pertinent recording indexes for each holder of record title for the period during which he [or she] held such title." <u>Garden of Memories</u>, 109 N.J. Super. at 533.

The Wachovia HELOC with the attached Schedule A was recorded and indexed by the name of the mortgagor, Cicenia, by the Hudson County Register's Office. N.J.S.A. 46:26A-8(c). The name was spelled correctly, thereby allowing for a successful title search. <u>Manchester Fund, Ltd. v. First Am. Title Ins. Co.</u>, 332 N.J. Super. 336, 344 (Law Div. 1999). Schedule A referenced by incorporation the Cicenia deed, which sufficiently described Unit 2. Therefore, defendants had record or constructive notice of Wells Fargo's interest in Unit 2 via the Wachovia HELOC.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2189-16T4